UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:04-CV-386R

COREY M. RICHARDSON                                                      PLAINTIFF

v.

BOARD OF EDUCATION OF JEFFERSON COUNTY KENTUCKY,          DEFENDANTS
STEVEN DAESCHNER,
JERRY C. KEEPERS,
THOMAS B. KNABEL,
PAUL COURTIEN,
LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT,
LOUISVILLE METRO POLICE DEPARTMENT,
WILLIAM S. CARCARA, and
HENRY COX

### MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment (Docket #32, 33, 34). Plaintiff filed a response (Docket #50, 52, 54) to which Defendants have replied (Docket #61, 62, 63). Plaintiff voluntarily dismissed his claim against Louisville Metro Police Department (Docket #54). Plaintiff has also filed a Motion to Strike (Docket #65) portions of Cox's reply to Richardson's response to Cox's Motion for Summary Judgment (Docket #62). Cox responded (Docket #66). These matters are now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment is **GRANTED**. For the reasons that follow, Plaintiff's Motion to Strike is **DENIED**.

### BACKGROUND

Richardson filed these 42 U.S.C. §§ 1981, 1983, and 1985(3) claims, in addition to state law claims of negligence, negligent hiring and retention, false imprisonment, battery, and intentional infliction of emotional distress. Specifically, Richardson argues that Defendants violated his Fourth

1

and Fourteenth Amendment rights by subjecting him to an unreasonable search and seizure and a violation of his equal protection clause rights guaranteed by the United States Constitution pursuant to 42 U.S.C. § 1983; the Defendants violated 42 U.S.C. §§ 1981 and 1985(3) by engaging in racial discrimination; and the  Defendants violated Kentucky state law through negligence, negligent hiring and retention, false imprisonment, battery, and intentional infliction of emotional distress.

On May 21, 2002, at approximately 11:50 a.m., during the school lunch period, Paul Courtien, an instructor who assisted in security matters, observed Corey Richardson, Aaron Chambers, and Derrick Young, all African-American students, enter a stairwell on the second floor of Southern High School (Southern).  This was in violation of school policy which required all students to be in class or in the cafeteria.  Approximately five seconds after Courtien saw Richardson and the other young men enter the stairwell, he heard a loud boom.  School fire alarms went off after the explosion and a large degree of chaos resulted.

After the explosion Courtien examined the stairwell.  He observed paper debris, that it was full of smoke, and that there were black marks on the wall.  Courtien contacted Thomas Knabel, Richardson's assistant principal, advising him that he observed Richardson going into the stairway prior to hearing the loud explosion.

Courtien then proceeded to stop Richardson on the first floor, telling him that Knabel was looking for him.  Richardson, Chambers, and Young were each escorted to their respective assistant principal's office.  Richardson's assigned assistant principal was Knabel.

Richardson was sixteen years old and a junior at Southern at the time of the incident.  He had significant disciplinary problems while at Southern resulting in four suspensions for fighting and for possessing matches or a lighter at school.

2

The Jefferson County Public Schools have had search procedures in place since 1999, which provide that "[t]he purpose of searching students . . . is to protect the property and safety of others and/or to maintain the on-going educational process of the school."  The procedures require "reasonable suspicion" before a student may be searched.  "Reasonable suspicion" is defined as a "[s]ufficient probability to believe that the search will turn up evidence that the student has violated or is violating a criminal law, or school, or District policies or rules."  Personnel are not allowed to conduct searches that "would require disrobing to the skin."  Rather the procedures mandate that school administrators contact law enforcement officers if "the search may require disrobing to the skin; or the student refuses to be searched."

Upon arrival at Knabel's office, Knabel smelt Richardson's hands and perceived a strong odor of gunpowder on them.  Knabel had Richardson empty his pockets and turn his pockets inside out.  Nothing was found.  Knabel then told Courtien to get Officer Henry Cox, a  police officer for the former Jefferson County Police Department (JCPD), now part of the Louisville Metro Police Department, who had been hired by Southern to  provide extra security on the last days of school.  Richardson told Knabel that he wanted to call his father but Knabel would not allow him to.  At this point, Richardson was "fussing" at Knabel.

Courtien returned to the office with Cox and Jerry C. Keepers, Southern's principal.  Cox was told by Keepers that they thought Richardson possessed fireworks, and that Knabel suspected him of having hidden matches and a lighter.[1]  Cox was told that Richardson had been witnessed

---

[1]Keepers indicated that his suspicion as to Richardson was based in part on another student identifying Richardson as the one who threw the firework, however, he does not indicate the identity of this student.  In his reply to Richardson's response to his Motion for Summary Judgment (Docket #62), served on Richardson on May 15, 2006, Cox indicates that Chambers' identification of Richardson as the student who threw the firework formed part of the basis of his

running down the hall and had lit the cherry bomb.  Cox was told that the was brought to the office to both calm Richardson and to search him.

Knabel told Cox to search Richardson.  Cox told Richardson to put his hands on the wall and then patted him down.  Cox also checked inside Richardson's pockets and had him remove his shoes and socks.  Cox did not find anything.

Because Knabel thought Richardson had put something in his shorts he told Cox to give Richardson a thorough search.  Cox told Richardson that Richardson would need to pull his pants down.  Richardson objected and said that they could not conduct that type of search without his parents' consent.  When Richardson refused to cooperate, Cox told him that if he didn't cooperate, he was going to take him to jail.  Cox then threateningly said, "You don't want to go downtown because I'll put stuff on you."  Richardson interpreted this to mean a gun or drugs.  Cox then placed handcuffs on Richardson.  Then Cox again asked Richardson if he was going to cooperate.  At this point Richardson agreed to cooperate.  Cox took the handcuffs off and Richardson unbuckled his pants and pulled them down below his knees.

After Richardson had pulled down his pants, and with Keepers, Courtien, and Knabel surrounding them, Cox grabbed Richardson's boxers from the top, pulled them out, and shook them. When Cox pulled Richardson's boxers out, Richardson's groin area was visible to Cox.  Cox told Knable that Richardson did not have anything on him.  Afterwards, Cox told Richardson that he

---

reasonable suspicion.  Richardson moved on August 29, 2006, to strike any facts that assumed that Defendants had information from Chambers when they determined to search Richardson (Docket #65).  Richardson's Motion to Strike was filed 109 days after service of Cox's reply, in violation of FED. R. CIV. P. 12(f) which requires that parties move to strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter"from a pleading within twenty days after service of the pleading upon the party.  Hence the Motion to Strike was untimely.

could pull his pants up and then smacked him on the butt and said, "That wasn't so bad now, was it?"  While Richardson was pulling up his pants, Young walked by the open office door.  Chambers also walked by the door during the search.

Once Cox completed his search, Richardson was left alone in Knabel's office and used the phone to call his father.  He remained in the office until his father arrived.

Richardson testified that he never felt that he could leave Knabel's office at any time from his arrival and that he never asked to leave the office.  No one ever told him that he was not free to leave.

As a result of the incident, Richardson was suspended from school.  Due to his repeated violations of school rules, it was recommended that Richardson attend an alternative school, namely Buechel Metropolitan High.  Richardson graduated from Buechel in 2003.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of

5

evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

I.    **PLAINTIFF'S CLAIMS AGAINST KEEPERS, KNABEL, COURTIEN, AND COX**

In *Harlow v. Fitzgerald*, the United States Supreme Court held that government officials performing discretionary functions are generally shielded from civil liability, so long as their conduct does not violate constitutional rights or statutory provisions of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The sequence of analysis to determine whether qualified immunity applies is a two-step process that includes: (1) taking into consideration whether a constitutional right has been violated; and, if so, (2) determining whether it is a clearly established right that a reasonable official under the circumstances should know. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

A.    *Claim of Unreasonable Search and Seizure*

**1. Constitutional Right**

In *New Jersey v. T.L.O.*, the Supreme Court held that the Fourth Amendment applies to searches conducted by school authorities but rejected strict adherence to a probable cause requirement.  *New Jersey v. T.L.O.*, 469 U.S. 325, 336-37, 341 (1985).  The Court found that the

legality of a school search depends on its reasonableness under all the circumstances. *Id.* at 341. Determining the reasonableness of a school search requires a twofold inquiry: first, was the action justified at its inception; and second, was the search as conducted reasonably related in scope to the circumstances justifying the search. *Id.* In general, "a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* at 341-42. A search is generally "permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and nature of the infraction." *Id.* at 342.

In the present case, Richardson was observed by Courtien, a school instructor, entering the stairwell approximately five seconds prior to hearing a loud explosion and an examination after the explosion showed that the explosion had occurred in that stairwell. Richardson had a history of significant disciplinary problems at Southern including two incidents involving possession of matches or a lighter at school. Knabel also had smelt a strong odor of gunpowder on Richardson's hands. Intentionally causing the explosion in the school constituted felony arson under KRS Capter 513, et seq. According to the Jefferson County Public Schools Search Procedure it is also against school rules to have explosives or fireworks on school grounds. Hence, the search of Richardson was justified at its inception as there were reasonable grounds for suspecting that the search would turn up evidence that Richardson was violating either the law or school rules. *See id.* at 341-42.

Having found that the search was justified at its inception, the Court must now determine whether the search as conducted was reasonably related in scope to the circumstances justifying the search. *T.L.O.*, 469 U.S. at 341. The first search that Cox gave Richardson consisted of a pat down

and the removal of Richardson's socks and shoes.  The propriety of this search is not in dispute.  Finding nothing, Cox then had Richardson pull his pants down and then pulled out his boxer shorts from the top and shook them and looked down into the groin area.  The purpose of the search was to find explosives or related items.  Richardson was sixteen years old and finishing his junior year at the time of the search.  Only males were present in the office while Richardson was searched and the two students who walked by the office during the search were also males.  The event precipitating the search was an explosion implicating safety concerns.

In *Reynolds v. City of Anchorage*, the Sixth Circuit found that a police officer's warrantless strip search of a sixteen year old female while she was a resident in an institutional home was reasonable.  *Reynolds v. City of Anchorage*, 379 F.3d 358, 365 (6th Cir. 2004).  In *Reynolds*, two staff members of the home observed a female resident acting strangely and suspected drug use might be the reason.  *Id.* at 360.  The staff members told an officer of their suspicion which resulted in a search of the girl's room.  *Id.*  In the girl's room they found a plastic baggy which the officers believed may have contained drugs.  *Id.*  At some point the girl also insinuated that she might have drugs hidden in her undergarments.  *Id.*  A female officer was sent to the home to conduct a search of the girl for drugs.  The officer conducted the search in the girl's own room with a female staff member present.  *Id.* at 361.  The girl was told to remove her blouse and bra, put them back on, and then to remove her bottom clothing and underwear and bend over to allow a visual inspection of her rectal area.  *Id.*  The officer never physically touched the girl.  *Id.*  In finding that the search was reasonable, the Court relied on the fact that "[a]lthough the strip search was a highly invasive procedure, it was no more invasive than necessary to accomplish its purpose of insuring that Reynolds . . . [was] not concealing drugs on [her] person[].  It was conducted in a way designed to

minimize its instrusive effect" as the search was made in the girl's own room and did not involve touching. *Id.* at 365. The Court also distinguished the case of *Toles v. Friedman*, 2000 U.S. App. LEXIS 33237, No. 99-4031, 2000 WL 1871683 (6th Cir. Dec. 11, 2000), where the Sixth Circuit found that a reasonable law enforcement officer would not believe that exigent circumstances justified warrantless strip searches of three girls suspected of concealing stolen clothing under their outer clothing. The Court found that the situation in *Toles*, arising in the commercial context of a suspected theft by customers in a department store, was "totally unlike the suspected use of drugs by a juvenile delinquent in a children's home." *Reynolds*, 379 F.3d at 365; *see Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 605 (6th Cir. 2005) ("[A] search undertaken to find money serves a less weighty governmental interest than a search undertaken for items that pose a threat to the health or safety of students, such as drugs or weapons."). In *Williams v. Ellington*, the Sixth Circuit found that qualified immunity applied where school officials performed a warrantless strip search of a high school female student. *Williams v. Ellington*, 936 F.2d 881, 889 (6th Cir. 1991). There, a student was believed to have a glass vial filled with an inhalant called "rush." *Id.* at 883. A female assistant principal conducted a search of the student in front of a female secretary. *Id.* The girl was asked to empty her pockets, then to remove her T-shirt, and then to lower her blue jeans to her knees. *Id.* The Court found that the scope of the search was not unreasonable taking into account the size of the glass vial that was sought and the suspected nature of the substance the vial contained. *Id.* at 887.

Like the searches in issue in *Reynolds* and *Williams*, the search in the present case involved a search for an item that posed a threat to health or safety, namely an explosive device. Also like the searches in these cases, the search was conducted by someone of the same sex and was only

visible to members of the same sex.  Richardson was also of a similar age as the plaintiffs in these cases.  Therefore, this Court finds that the measures adopted for the search, a brief visual inspection for concealed explosives or related items, were reasonably related to the objectives of the search.  This Court also finds that the search was not excessively intrusive in light of Richardson's age, the fact that the search was conducted and only visible to other males, and that the search was for an explosive device which posed a threat to the safety to others within the school.

Therefore, this Court finds that Richardson's claims that the search and seizure was unconstitutional fails as a matter of law.  Also, as there was no constitutional violation, Richardson's claims that Keepers, Knabel, and Courtien deprived him of his constitutional rights by failing to intercede fails as a matter of law.

### 2. Clearly Established

Although the Court has found that the search of Richardson was not in violation of his constitutional rights, the Court finds that even if the search did violate his constitutional rights, the right was not clearly established on May 21, 2002, the date of the incident and therefore the defendants are entitled to qualified immunity.  When determining whether a right is clearly established the Court first looks to decisions of the Supreme Court and then to decisions of courts within this circuit.  *Beard*, 402 F.3d at 606-07.  "In order for the law to be clearly established as of the date of the incident, the law must truly compel (not just suggest or allow or raise a question about), the conclusion that what defendant is doing violates federal law in the *circumstances*."  *Id.* (citation omitted).  For purposes of the "clearly established" inquiry, the analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.

In *T.L.O.*, the Supreme Court announced that school searches should be subject to a reasonableness standard and announced a two-pronged, multi-factor test that weighs students' interest in privacy against a school's interest in maintaining a safe learning environment. *T.L.O.*, 469 U.S. at 341-43. However, the Court did little to explain how the factors should be applied in factual circumstances other than the ones with which they were dealing. *Beard*, 402 F.3d at 607. In *Veronia School District v. Acton*, the Court found that some searches undertaken without individualized suspicion are reasonable, which is inapplicable to the present case as the school officials suspected Richardson of setting off the explosive, hence they had individualized suspicion. *Veronia Sch. Dist. v. Acton*, 515 U.S. 646, 664 (1995). Thus, Supreme Court precedent does not compel the conclusion that the defendants' actions violated Richardson's constitutional rights.

A review of Sixth Circuit jurisprudence demonstrates that at the date of the incident the law did not compel the conclusion that the defendants' actions violated Richardson's constitutional rights. *See Williams*, 936 F.2d at 889.

Therefore, this Court finds that even if the search of Richardson violated his constitutional rights, the defendants are entitled to qualified immunity. Keepers, Knabel, and Courtien are also entitled to qualified immunity on Richardson's claim that they deprived him of his constitutional rights by failing to intercede.

**B.**     ***Equal Protection Claim***

Richardson claims that Keepers, Knabel, Courtien, and Cox acted to deprive him of the equal protection of the laws or equal privileges and immunities under the laws. The Equal Protection Clause requires public institutions to "treat similarly situated individuals in a similar manner." *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996) (quoting *Gutzwiller v. Fenik*, 860

11

F.2d 1317, 1328 (6th Cir. 1988)).  When a § 1983 plaintiff states a claim under the Equal Protection

Clause, the plaintiff must prove by "requisite direct, circumstantial, or statistical evidence that he

was the target of racial profiling."  *United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000).

This burden requires more than speculation.  *Id*. at 790.  In addition, the plaintiff must allege that

the officer intentionally discriminated against a member of a protected class.  *LRL Props. v. Portage

Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir. 1995) (citing *Henry v. Metro. Sewer Dist.*, 922 F.3d

332, 341 (6th Cir. 1990).

      In the instant matter, Richardson testified that Keepers did not punish a white girl for

cussing, but punished him for the same behavior.  Richardson also testified that Keepers derided

black students, telling them that they would never amount to anything.  The three students who were

stopped after the explosion were all black males, although Chambers testified that there were other

students in the stairwell, however, he failed to indicate the race of the other students present in the

hallway.  Despite the evidence proffered, Richardson has not met the burden as required by *Saucedo*

and *Henry*.  Richardson has not alleged any specific incidents or specific racial intent , or any

actions or statements made by Keepers, Knabel, Courtien, or Cox related to this particular matter,

which show that the activities in question were racially motivated in violation of the Equal

Protection Clause.  The evidence provided does not prove that Richardson was the target of racial

profiling.  The evidence indicates that the motivation for the stop came from Courtien's observation

of Richardson  entering the stairwell where the explosion occurred moments before the explosion

and his prior disciplinary history at Southern, including two incidents involving possession of

matchers or a lighter at school.

      Therefore, this Court finds that Richardson's Equal Protection Clause claim fails as a matter

of law.

**C.**     ***42 U.S.C. § 1985(3) Racial Discrimination Claim***

Richardson claims that Keepers, Knabel, Courtien, and Cox conspired together to deprive him of the equal protection of the laws or equal privileges and immunities under the laws.  The Sixth Circuit has held that in order to establish a claim for conspiracy under civil rights statute 42 U.S.C. § 1985(3), the plaintiff must prove: (1) conspiracy involving two or more persons; (2) a deprivation, directly or indirectly, affecting a person or class of persons entitled to equal protection of the laws; (3) an act in furtherance of conspiracy; and (4) such act causes injury to person or property, or deprivation of any right or privilege of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994).

The facts, examined in a light most favorable to Richardson, do not amount to a claim of racial discrimination or civil rights conspiracy under 42 U.S.C. § 1985(3).  Richardson asserts that the conspiracy required under the first step comes from the culture of Southern. He refers to a conversation between his father and Benjamin White, a School Board Official, but does not give the details of that conversation.  Even assuming that racial animosity towards African-Americans may have existed within Southern at the time of the incident, no evidence provided by Richardson cites or supports a particular conspiracy amongst two or more persons geared at African-Americans in general, and specifically at Richardson.

Therefore, this Court finds that Richardson's 42 U.S.C. § 1985(3) claim fails as a matter of law.

**D.**     ***42 U.S.C. § 1981 Claim***

A suit under 42 U.S.C. § 1981 requires that the plaintiff prove intentional or purposeful

13

discrimination. *Gen. Bldg. Contract Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 378 (1982). As discussed above, Richardson has failed to allege any specific intentional or purposeful racial discrimination related to this matter on the part of the defendants.

Therefore, this Court finds that Richardson's 42 U.S.C. § 1981 claim fails as a matter of law.


## II.   CLAIMS AGAINST KEEPERS, KNABEL, COURTIEN, COX , AND CARCARA IN THEIR OFFICIAL CAPACITY

The United States Supreme Court, in a case arising from the Sixth Circuit, has held that a "suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989). As such, a suit against a government agent in their official capacity equates to a suit against the government agency in question. Richardson asserts that in their official capacities the actions of defendants Keepers, Knabel, Courtien, and Cox are linked to the Board of Education of Jefferson County (BOE) and that the actions of Cox and Carcara are linked to the Louisville/Jefferson County Metro Government (Metro). A municipality or school board may be held accountable for the actions of their employees only if these actions stem from officially executed policy, or the toleration of a custom that leads to, causes, or results in the deprivation of a constitutionally protected right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Doe v. Claiborne County*, 103 F.3d 495, 507 (1996).

Therefore, this Court finds that the liability against BOE and Metro cannot come solely from the acts of Keepers, Knabel, Courtien, and Cox in their official capacity.

## III.   CLAIMS AGAINST THE LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT AND ITS SUPERVISORY OFFICIALS

A municipality may be liable under § 1983 through: (1) actions of legislative bodies; (2) agencies exercising delegated authority that amounts to an official policy; (3) the actions of individuals with final decision-making authority; (4) policies of inadequate training or supervision; or (5) custom. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 473, 480, 481-84 (1986); *Monell v. Dep't of Soc. Servs.*, 436 . S. 658, 661, 694 (1978); *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989). As applied to the instant matter, Richardson asserts that Metro can be proven liable through ways (3) - (5). Additionally, Richardson asserts that William S. Carcara, police chief of the JCPD at the time of the incident, is liable for failing to instruct, supervise, and discipline Cox. However, any liability on the part of Metro or Carcara must be based on the finding that an employee has deprived the defendant of a constitutional right. *Monell*, 436 U.S. at 690-91; *Doe*, 103 F.3d at 507; *Mills v. City of Barbourville*, 389 F.3d 568, 580 (6th Cir. 2004) (stating that to establish liability of a supervisory official pursuant to § 1983, plaintiff must prove that defendant is personally responsible for unconstitutional actions that caused his injury). As discussed above, the search and detention of Richardson did not deprive him of a constitutional right.

Therefore, this Court finds that Metro is not liable to Richardson under 42 U.S.C. § 1983. This Court also finds that Carcara is not liable to Richardson under 42 U.S.C. § 1983 in his capacity as a supervisory official.

## IV.    CLAIMS AGAINST THE BOARD OF EDUCATION OF JEFFERSON COUNTY AND ITS SUPERVISORY OFFICIALS

As discussed above, any municipal liability must be based on the finding that an employee has deprived the defendant of a constitutional right. *Monell*, 436 U.S. at 690-91; *Doe*, 103 F.3d at 507. As applied to the instant matter, Richardson asserts that BOE is liable through the actions of individuals with final decision-making authority, through policies of inadequate training or

supervision, and through custom.   Additionally, Richardson asserts that Steven Daeschner (superintendent of Jefferson County schools), Keepers, and Knabel, as supervisory officials, are liable for failing to instruct, supervise, and discipline the school employees under them, including Cox .   However, any liability must be based on the finding that an employee has deprived the defendant of a constitutional right.  *Monell*, 436 U.S. at 690-91; *Doe*, 103 F.3d at 507; *Mills*, 389 F.3d at 580 (stating that to establish liability of a supervisory official pursuant to § 1983, plaintiff must prove that defendant  is personally responsible for unconstitutional actions that caused his injury).  This Court has previously determined that the search and detention of Richardson did not deprive him of a constitutional right.

Therefore, this Court finds that BOE is not liable to Richardson under 42 U.S.C. § 1983. This Court also finds that Daeschner, Keepers, and Knabel are not liable to Richardson under 42 U.S.C. § 1983 in their capacity of supervisory officials.

## V.    STATE CLAIMS

When an officer or employee of a governmental agency is sued in his representative capacity, the officer's or employee's actions are afforded the same immunity, if any, to which the agency, itself, would be entitled.  *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).  When sued in their individual capacities, public officers and employees enjoy only qualified official immunity.  *Id.* Qualified official immunity applies to the negligent performance by a public officer of (1) discretionary acts or functions; (2) in good faith; and (3) within the scope of the employee's authority.  *Id.*; *see also Jefferson County Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004) (stating that the qualified immunity inquiry under state law is essentially identical to the qualified immunity inquiry under 42 U.S.C. § 1983.).

16

A local board of education is an agency of state government entitled to governmental immunity to the extent it is performing a governmental, as opposed to proprietary, function. *Yanero*, 65 S.W.3d at 519, 527.  "School boards fulfill a governmental function of state government by providing public education within a particular geographic area."  *Id.* at 526-27 (internal quotation marks omitted).  In *Yanero*, the Kentucky Supreme Court found that the sponsoring of an extracurricular baseball team by a local school board was a governmental function.  *Id.*  This Court finds that conducting an investigation into an incident occurring within the school, which impacts the safety of students in the care of the school, during the school day is a governmental function.

Sovereign immunity bars state-law actions against county governments, hence Richardson may not proceed on any of his state law claims against Metro.  *Schwindel v. Meade County*, 113 S.W.3d 159, 163 (Ky. 2003).

Therefore, this Court finds that Richardson's claims against BOE and against Daeschner, Keepers, Knabel, and Courtien acting in their official capacity are barred by governmental immunity.  This Court also finds that any claims against Cox in his official capacity as an employee of BOE are barred by governmental immunity.  This Court finds that Richardson's claims against Metro and against Carcara acting in his official capacity are barred by sovereign immunity.  This Court also finds that any claims against Cox in his official capacity as a member of the Louisville Metro Police Department are barred by sovereign immunity.

## A.    *Negligence*

Richardson claims that Keepers, Knabel, Courtien, and Cox breached their duty to Richardson to exercise the care and skill ordinarily expected of a person hired to work with members of the public and as a result he has suffered damages.  In Kentucky, the elements of a negligence

17

action are: (1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992). An absence of any of these elements leads to the failure of the claim. *Id.*

As discussed above, the search and detention as conducted did not violate Richardson's constitutional rights. Nor did the search violate the official Jefferson County school search procedure. Thus, Richardson has not shown a breach of any duty owed to him by the defendants.

Additionally this Court finds that even if there was not reasonable justification for the detention, the defendants are entitled to qualified immunity as their decision to search and detain Richardson was a good faith judgment call made in a legally uncertain environment. *See Yanero*, 65 S.W.3d at 522.

Therefore, this Court finds that Richardson's claims of negligence fail as a matter of law.

**B.**   ***Negligent Hiring and Retention***

Under Kentucky law, the two elements of a suit for negligent hiring and retention are that (1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000). "Public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those employed by them if they have employed persons of suitable skill." *Yanero,* 65 S.W.3d at 528. Evaluating the credentials of a prospective employee is a discretionary function, however, there is a ministerial aspect to the hiring process in that the person to whom the hiring of subordinates is entrusted must at least attempt to hire someone who is not incompetent to perform the task for which they are hired. *Id.* Authority exists for the proposition

18

that a public officer can be subject to personal liability in tort for hiring an employee known to that officer to be incompetent. *Id.*; *Whitt v. Reed*, 239 S.W.2d 489, 491 (Ky. 1951).

Richardson has not presented evidence that Carcara attempted to hire an incompetent person for Cox's position, nor has he shown that Cox did not have the skill necessary for that position. Although, Richardson has cited to complaints filed against Cox during his tenure with the police, he has failed to cite a complaint concerning action of a similar type to that at issue here. Therefore, Carcara did not know and should not reasonably have known that Cox was unfit for his position and also that the retention of Cox at that position created an unreasonable risk of harm to Richardson. Even if this Court had found otherwise, Carcara would be entitled to qualified official immunity as there is no showing that Carcara acted in bad faith.

Following the same reasoning, Richardson has also failed to present evidence that Daeschner, Keepers, or Knabel knew or should have reasonably have known that employees were unfit for their positions and that their retention created an unreasonable risk of harm to Richardson. Even if this Court had found otherwise, Daeschner, Keepers, and Knabel would be entitled to qualified official immunity as there is no showing that they acted in bad faith.

Therefore, this Court finds that Richardson's claims of negligent hiring fail as a matter of law.

**C.**     ***False Imprisonment***

Richardson claims that Keepers, Knabel, Courtien, and Cox unreasonably restrained him of his liberty when they questioned him in the office. "Kentucky cases define false imprisonment as being any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats or

otherwise.  Furthermore, false imprisonment requires that the restraint be wrongful, improper, or without a claim of reasonable justification, authority or privilege." *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. App. 2001) (citing to *Grayson Variety Store, Inc. v. Shaffer*, 402 S.W.2d 424 (Ky. 1966); *Great Atl. & Pac. Tea Co. v. Billups*, 69 S.W.2d 5 (Ky. 1934); *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154 (Ky. App. 1977); *J.J. Newberry Co. v. Judd*, 82 S.W.2d 359 (Ky. 1935); and *Louisville & Nashville R.R. Co. v. Mason*, 251 S.W.184 (Ky. 1923)).

As stated previously in this opinion, reasonable suspicion existed to believe that Richardson had set off the explosive device in the stairwell as he was observed entering the stairwell prior to the explosion, had a disciplinary history at Southern involving incidents with matches and lighters, and after the explosion his hands smelt like gunpowder.  Reasonable justification existed to confine Richardson to the office.

Therefore, this Court finds that Richardson's claim of false imprisonment fails as a matter of law.  Additionally this Court finds that even if there was not reasonable justification for the detention, the defendants are entitled to qualified immunity as their decision to detain Richardson was a good faith judgment call made in a legally uncertain environment.  *See Yanero* , 65 S.W.3d at 522.

**D.**    *Battery*

Battery is defined as "any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him."  *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000).  As Cox touched Richardson while conducting the search, this Court must determine whether that touching was unlawful.  As stated above, the search of Richardson was reasonable under the circumstances.  As the search as conducted was permissible, any touching of Richardson that

occurred during the search was not unlawful.

Therefore this Court finds that Richardson's claim of battery fails as a matter of law. Additionally this Court finds that even if the search as conducted was not permissible, the defendant is entitled to qualified immunity as the decision to search Richardson was a good faith judgment call made in a legally uncertain environment. *See Yanero*, 65 S.W.3d at 522.

## E.   *Intentional Infliction of Emotional Distress*

Richardson claims that Keepers, Knabel, Courtien, and Cox caused Richardson sever emotional and/or mental distress when they stopped and searched him.  To make out a claim for intentional infliction of emotional distress, or outrage, the plaintiff must show that: (1) defendants' conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) a causal connection between defendants' conduct and the emotional distress; and (4) the emotional distress is severe. *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999).  An action for intentional infliction of emotional distress will not lie for "petty insults, unkind words and minor indignities; the action only lies for conduct which is truly outrageous and intolerable." *Banks*, 39 S.W.3d at 481.  "[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only  to cause extreme emotional distress in the victim, the tort of intentional infliction of outrage will not lie." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993).

Cox's  search of Richardson was made pursuant to a reasonable belief that Richardson had explosives or related items on his person, there is no indication that the purpose behind this search was solely to cause Richardson extreme emotional distress.

Therefore, this Court finds that Richardson's action for intentional infliction of emotional distress fails as a matter of law. Additionally this Court finds that even if there was not reasonable justification for the search, the defendants are entitled to qualified immunity as their decision to search Richardson was a good faith judgment call made in a legally uncertain environment. *See Yanero*, 65 S.W.3d at 522.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED.** The Plaintiff's Motion to Strike is **DENIED**.

An appropriate order shall issue.